IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
: Chapter 11
In re: :
: Case No. 20-10361 (KBO)
HYGEA HOLDINGS CORP., *et al.*, :
: (Joint Administration Pending)
Debtors.¹ :
:
------------------------------------------------------------ x

# DEBTORS' MOTION FOR ENTRY OF ORDER AUTHORIZING
# DEBTORS TO ASSUME THE RESTRUCTURING SUPPORT AGREEMENT

Hygea Holdings Corp. ("HHC"), and certain of its affiliates, the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors" or "Hygea"), hereby move (the "Motion") for entry of an order substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to sections 105(a), 362 and 365(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to assume that certain Restructuring Support Agreement (the "RSA"), dated as of February 7, 2020, by and among the Debtors, on one hand, and Bridging Income Fund LP and Bridging Finance Inc. (collectively,

---

¹ The Debtors and the last four digits of their respective taxpayer identification numbers are: All Care Management Services, Inc. (6484); First Harbour Health Management, LLC (0941); First Harbour Medical Centers, LLC (3861); Florida Group Healthcare LLC (7956); Gemini Healthcare Fund, LLC (4928); Hygea Acquisition Longwood, LLC (1649); Hygea Acquisition Orlando, LLC (3507); Hygea Health Holdings, Inc. (8926); Hygea Holdings Corp. (2605); Hygea IGP of Central Florida, Inc. (9453); Hygea IGP, LLC (7724); Hygea Medical Centers of Florida, LLC (5301); Hygea Medical Partners, LLC (4486); Hygea of Delaware, LLC (4830); Hygea of Georgia, LLC (5862); Hygea of Pembroke Pines, LLC (6666); Hygea Primum Acquisition, Inc. (8567); Medlife Activity Center, LLC (2311); Mobile Clinic Services, LLC (9758); Palm A.C. MSO, LLC (2585); Palm Allcare Medicaid MSO, Inc. (6956); Palm Allcare MSO, Inc. (0319); Palm Medical Group, Inc. (5028); Palm Medical MSO LLC (7738); Palm Medical Network, LLC (9158); Palm MSO System, Inc. (2178); Palm PGA MSO, Inc. (8468); Physician Management Associates East Coast, LLC (7319); Physician Management Associates SE, LLC (3883); Physicians Group Alliance, LLC (7824); Primum Alternatives, Inc. (7441); Primum Healthcare, LLC (0157); and Professional Health Choice, Inc. (6850). The address of the Debtors' corporate headquarters is 8700 W Flagler Street, Suite 280, Miami, FL 33174.

"Bridging"), on the other hand,[2] a copy of which is attached to the Proposed Order as Exhibit 1. In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Keith Collins, M.D. in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed with the Court concurrently herewith. In further support of this Motion, the Debtors respectfully represent as follows:

## RELIEF REQUESTED

1. By this Motion, the Debtors seek entry of an order pursuant to sections 105(a), 362 and 365(a) of the Bankruptcy Code and Bankruptcy Rule 6004 authorizing the Debtors to assume the RSA.

## JURISDICTION AND VENUE

2. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

---

[2] The Debtors and Bridging are referred to herein as the "Parties" and individually as a "Party."

4.      The statutory and legal predicates for the relief requested herein are sections 105(a), 362 and 365(a) of the Bankruptcy Code and Bankruptcy Rule 6004.

## BACKGROUND

**A.      The Chapter 11 Cases**

5.      On the date hereof (the "Petition Date"), each Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  The Debtors have requested that the Chapter 11 Cases be jointly administered.  The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of the Chapter 11 Cases, is set forth in the First Day Declaration.

6.      The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7.      To date, no creditors' committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee").  No trustee or examiner has been appointed in the Chapter 11 Cases.

**B.      The RSA and the Contemplated Plan of Reorganization**

8.      As set forth in the First Day Declaration, since 2017, the Debtors have confronted liquidity challenges and operational issues that threaten their ability to continue as a going concern.  The Debtors are currently operating at a substantial loss – approximately $327,000 of negative cash flow per week.  As a result, the Debtors have been unable to service their debt obligations to Bridging, which total in excess of approximately $160 million Canadian (approximately $121 million in U.S. Dollars), and certain events of default have occurred under

the related credit agreement. More significantly, the Debtors have consistently required emergency funding from Bridging to satisfy critical expenses such as payroll.

9. Given the Debtors' dire financial situation and the lack of any other viable alternatives, in or about October 2019, the Debtors and Bridging began discussing the framework of a potential chapter 11 plan of reorganization (the "Plan"). Since October 2019, the parties entered into five separate forbearance agreements and Bridging provided millions of dollars in emergency funding to the Debtors. The Debtors would not have been able to continue to make payroll or fund operations without the additional funding from Bridging. After months of negotiating, the parties agreed upon the material terms of the Plan, and embodied those terms in a restructuring term sheet (the "Restructuring Term Sheet"), which is attached to the RSA as Exhibit B. The RSA and the Restructuring Term Sheet are by-products of good faith, arms'-length negotiations between the Debtors and Bridging.

10. As set forth in the Restructuring Term Sheet, the Plan contemplates a reorganization of the Debtors pursuant to which, among other things, (i) Bridging's existing secured debt would be reinstated in an amount equal to the debt capacity of the reorganized debtors (the "Reorganized Debtors"); (ii) all of the Reorganized Debtors' equity would be transferred to Bridging on account of its claim; (iii) a liquidating trust would be created for the benefit of the Debtors' unsecured creditors; and (iv) prepetition payroll tax claims entitled to payment under section 1129(a)(9)(C) of the Bankruptcy Code would be satisfied in full.

11. The RSA is necessary to preserve the value of the Debtors' business. One of the most profitable aspects of the Debtors' business are their management services organizations ("MSOs"), which have valuable payor agreements with Medicare Health Maintenance Organizations ("HMOs") and various third-party physician provider groups ("Providers"). The

viability of the Debtors' MSO business depends on: (a) the ability of the Debtors to continue to perform under their HMO payor and Provider contracts; (b) the Debtors maintaining goodwill and a strong working relationship with the HMOs and Providers; and (c) the Debtors ensuring that there MSO businesses remain in compliance with the numerous contractual and regulatory requirements imposed by the Payor agreements.

12. The Debtors believe that their MSO business likely would suffer a significant loss in value in a contentious and drawn-out chapter 11 process because the HMOs could attempt to direct their insureds (enrollees) to other MSOs or providers absent immediate assurance of the Debtors' ability to continue to perform and to exit these cases. Therefore, the only realistic way to preserve value for the Debtors' estates is to emerge quickly from chapter 11 with a viable business plan. To that end, the Debtors undertook significant efforts to negotiate a restructuring process and case timeline that would protect the value of the Debtors' businesses and enable a timely and seamless transition of such businesses to Bridging through the Plan. Accordingly, the Debtors submit that strict compliance with the process and milestones set forth in the RSA and the Restructuring Term Sheet is critical.

13. To the extent the Plan process is unsuccessful, the Restructuring Term Sheet provides for a sale of substantially all of the Debtors' assets (the "Sale") pursuant to section 363 of the Bankruptcy Code at which Bridging would credit bid all or a portion of its secured debt. Both the Plan process and Sale process would be subject to higher and better offers and Bridging would have no obligation to ensure that it is the successful bidder.

14. To accomplish the goals of these Chapter 11 Cases, Bridging has agreed to (i) provide additional funding in the form of a new money senior secured, superpriority, priming debtor-in-possession delayed draw term loan in an aggregate principal amount not to exceed

$9,980,303.00 and (ii) allow the Debtors to continue using Bridging's cash collateral during the pendency of these Chapter 11 Cases. Finally, under the Plan, Bridging has agreed to provide the Reorganized Debtors with a working capital loan to fund the Reorganized Debtors' post-effective date working capital needs.

15. Importantly, the RSA contains a "fiduciary out" provision. See RSA, § 8 ("Nothing herein shall prevent a determination by Hygea, made in good faith and following consultation with external counsel, subsequent to the date hereof that its compliance with any covenant, obligation or agreement contained in this Agreement or the Restructuring Term Sheet is no longer consistent with its fiduciary duties under applicable law ...."). This provision ensures that, while the Debtors are contractually bound to comply with the RSA, the Debtors retain the right to pursue an alternative restructuring path in compliance with their fiduciary duties.

16. For all of these reasons, the Debtors believe that assumption of the RSA is an exercise of sound business judgment, is in the best interests of their estates, and should be approved.

17. The following chart summarizes the material terms of the RSA. Capitalized terms used by not defined in the chart have the meaning ascribed to them in the RSA:[3]

| Mutual Obligations of the Parties | So long as no Agreement Termination Event (as defined in the RSA) has occurred and has not been waived in accordance with the RSA, each Party will:<br><br>1. Subject to the "fiduciary out" provisions of the RSA, support or encourage, directly or indirectly, any financial restructuring or sale of assets concerning Hygea or its assets other than the Restructuring Transaction; *provided, however*, nothing in the RSA will preclude |
|---|---|

---

[3] The descriptions of the terms of the RSA provided in the Motion are intended only as a summary. In the event of any inconsistency between the descriptions set forth herein and the terms of the RSA, the terms of the RSA govern. Capitalized terms not defined herein have the meanings ascribed to such terms in the RSA.

6

| | |
|---|---|
| | Hygea from presenting any and all offers for the sale of assets to Bridging.<br><br>2. Take any action inconsistent with the Restructuring Transaction, the Restructuring Term Sheet, the DIP Loan Documents, the RSA or the transactions contemplated hereby, or the timing of confirmation and consummation of such transactions as described in the RSA.<br><br>3. Support or encourage any Person to (a) oppose approval of the Disclosure Statement; (b) vote to reject the Plan (or direct any other Person to vote to reject the Plan), (c) "opt out" of, or object to, any releases or exculpations provided under the Plan, (d) otherwise commence any proceeding to oppose the Plan or object to confirmation thereof, or (e) otherwise agree to, consent to, or provide any support to any other chapter 11 plan or other restructuring or sale or liquidation of assets concerning either Hygea or its assets other than the Restructuring Transaction.<br><br>4. Support or encourage any Person to seek entry of an order in the Chapter 11 Cases (a) appointing an examiner with expanded powers or a trustee, (b) converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code or (c) dismissing the Chapter 11 Cases.<br><br>5. Object to or otherwise commence any proceeding to oppose the Plan or alter the Plan or any of the terms of the Restructuring Transaction (or any other document filed in furtherance of the Restructuring Transaction which is consistent with the Restructuring Transaction) or take any other action that is inconsistent with consummation of the Plan on terms that are contemplated by the Restructuring Term Sheet, the RSA or the Restructuring Transaction.<br><br>*See* RSA at § 5. |
| Bridging's Obligations | So long as no Agreement Termination Event has occurred and not been waived in accordance with the RSA, Bridging will:<br><br>1. Support, and not interfere or support interference with, Hygea's use of Cash Collateral pursuant to the DIP Loan Documents.<br><br>2. Take all steps necessary to support confirmation of the Plan on terms that are contemplated by the Restructuring Term Sheet and the RSA.<br><br>3. Vote, or cause to be voted, all claims, rights or interests to accept the Plan on terms that are contemplated by the Restructuring Term Sheet by the deadlines set forth in the disclosure statement related to the Plan (the "Disclosure Statement") by delivering a duly executed and completed ballot or ballots, as applicable, accepting the Plan. |

60437/0001-19402259v7

| | |
|---|---|
| | 4. Not "opt out" of, or object to, any releases or exculpations provided under the Plan (and, to the extent required by the ballot, affirmatively "opt in" to such releases and exculpations).<br><br>5. Not change, withdraw or revoke such vote (or cause or direct such vote to be changed, withdrawn or revoked).<br><br>6. In the event of a Sale, provide a draft of a stalking horse asset purchase agreement to Hygea within three (3) Business Days of withdrawal of the Plan or an order denying confirmation of the Plan.<br><br>*See* RSA at § 4.2(b). |
| <u>Hygea's Obligations</u> | Consistent with the exercise of Hygea's fiduciary duties, it will:<br><br>1. Provide Bridging with drafts of the Plan and Disclosure Statement no later than three (3) Business Days prior to the Petition Date in form and substance reasonably satisfactory to Bridging.<br><br>2. Support and take all commercially reasonable steps to commence the Chapter 11 Cases, including filing each of the Bankruptcy Documents, in form and substance reasonably satisfactory to Bridging, on or before the Petition Date.<br><br>3. Support and take all reasonably necessary steps in seeking to obtain from the Court a Confirmation Order by no later than the date that is 75 days following the Petition Date.<br><br>4. Provide drafts of the following documents (collectively, the "<u>Bankruptcy Documents</u>"), in form and substance reasonably satisfactory to Bridging, no later than three (3) Business Days prior to the Petition Date: (i) petitions with all required documents; (ii) declaration in support of "first day" motions; (iii) motion authorizing use of cash collateral and seeking approval of DIP financing; and (iv) motion to approve the RSA.<br><br>5. Support and take all commercially reasonable steps that are necessary to obtain any requisite regulatory or third-party approval for the Plan and Restructuring Transaction as expeditiously as is reasonably practicable under applicable law.<br><br>6. Not transfer any assets other than in the ordinary course of its business or as authorized by the Court.<br><br>7. Use commercially reasonable efforts to respond to written requests for information from Bridging as promptly as reasonably practicable |

8

| | |
|---|---|
| | (subject to any confidentiality restrictions or considerations). <br><br> 8. Use its best efforts to obtain approval of the release, injunction and exculpatory provisions as contemplated by the DIP Loan Documents and Plan for Bridging to the extent available under applicable law, which by way of example only will include opposing any effort by any Person to eliminate or reduce the scope of such release, injunction and exculpation provisions. <br><br> 9. In the event the Plan is not confirmed in accordance with the RSA and the Restructuring Term Sheet, file a motion within seven (7) Business Days of withdrawal of the Plan or an order denying confirmation of the Plan seeking approval to sell substantially all of Hygea's assets to Bridging as the stalking horse with a credit bid pursuant to section 363 of the Bankruptcy Code (the "Sale"). <br><br> 10. In the event of a Sale, provide drafts of the following documents, in form and substance reasonably satisfactory to Bridging, three (3) Business Day prior to filing such documents with the Court: (i) motion to approve bridging as stalking horse and the sale; and (ii) proposed order approving the sale. <br><br> 11. Provide Bridging with any and all offers for the purchase of Hygea's assets. <br><br> *See* RSA at § 7. |
| Fiduciary Out | Nothing in the RSA will prevent a determination by Hygea, made in good faith and following consultation with external counsel, subsequent to the date of execution of the RSA that its compliance with any covenant, obligation or agreement contained in the RSA or the Restructuring Term Sheet is no longer consistent with its fiduciary duties under applicable law by giving written notice thereof to Bridging, in which event the RSA will, notwithstanding anything the RSA to the contrary, be deemed automatically terminated seven (7) Business Days after such notice is provided to Bridging; *provided, further*, that nothing the RSA will prejudice Bridging from challenging such subsequent exercise of Hygea's fiduciary duties, including without limitation, seeking a determination from a court of competent jurisdiction that the actions or inactions by Hygea constitute an unlawful exercise of its fiduciary duties. *See* RSA at § 8. |
| Termination of RSA | Subject to certain provisions of the RSA that survive termination, in the event that the RSA is deemed terminated as a result of any Agreement Termination Event, all Parties will be immediately relieved of any obligation under the RSA. If the Chapter 11 Cases have been filed prior to such occurrence, such notice may be provided as part of a motion for relief from the automatic stay; *provided, however*, that nothing in the RSA will be deemed to require a motion for relief from the automatic stay to effect such termination. *See* RSA |

9

| | |
|---|---|
| | at § 10. |
| <u>Automatic Termination</u> | The RSA will be deemed automatically terminated as to all Parties upon the occurrence of any of the following Agreement Termination Events, without any further notice or action required:<br><br>1.  Execution of a mutual written agreement to terminate the RSA by each of the Parties hereto.<br><br>2.  If, following the Petition Date, the Court enters an order dismissing one or more of the Chapter 11 Cases or an order pursuant to section 1112 of the Bankruptcy Code converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.<br><br>3.  If it is determined that the Court is not the proper venue for the Chapter 11 Cases or the Chapter 11 Cases are transferred to another court for any reason.<br><br>4.  If the Plan is not confirmed by within 75 days of the Petition Date.<br><br>5.  If Hygea files a motion seeking to modify or amend the DIP Financing/Cash Collateral Order, unless such modification or amendment is acceptable in form and substance to Bridging.<br><br>6.  In the event of an Event of Default (as defined in the DIP Loan Documents) under the DIP Loan Documents.<br><br>7.  In the event Hygea files or supports confirmation of, or fails to actively oppose confirmation of, a plan of reorganization that is inconsistent with the filing or consummation of the Plan or that requests or would result in a modification or amendment of the Plan in a way that materially adversely affects Bridging as determined in Bridging's sole discretion.<br><br>8.  In the event Hygea files a motion, complaint, application, or other request seeking to disallow, subordinate or limit in any way the claims or amounts owed to Bridging under the Loan Documents or DIP Loan Documents, or seeking entry of an order by the Court disallowing, subordinating, or limiting in any way the claims of Bridging, to avoid any transfer or obligation, or seeking any other monetary or equitable relief from or against Bridging.<br><br>9.  In the event Hygea files a motion, objection, lawsuit, administrative or adversary proceeding or otherwise assists in any of the foregoing, which would result in a modification or amendment of the Plan (including in the case of document which is an interim order, by replacement with a final order) that materially adversely affects |

|  | |
|---|---|
|  | Bridging, or is otherwise inconsistent with the terms of the Restructuring Transaction in a manner that materially adversely affects Bridging.<br><br>10. In the event Hygea files a motion, complaint, application or other request seeking to disallow, subordinate, or limit in any way Bridging's right to credit bid in the event of a Sale.<br><br>11. If following the Petition Date, the Court: (i) enters an order denying confirmation of the Plan, or denies approval of the Sale as contemplated by the Restructuring Term Sheet; (ii) enters an order pursuant to section 1104 of the Bankruptcy Code appointing a trustee or appointing an examiner with powers beyond the duty to investigate and report (as set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code), including, without limitation, to operate and manage Hygea's business, unless waived by Bridging; or (iii) enters an order terminating, whether in whole or in part, Hygea's exclusive right to file a chapter 11 plan pursuant to section 1121 of the Bankruptcy Code.<br><br>12. The date upon which the Plan is substantially consummated.<br><br>13. The date upon which a Sale to Bridging is consummated.<br><br>*See* RSA at § 11. |
| <u>Termination Upon Five Days' Notice</u> | The RSA will be deemed automatically terminated as to all Parties upon the occurrence of any of the following Agreement Termination Events, following five days' notice by the specified Party:<br><br>1. By Bridging, if Hygea fails to meet any of the deadlines set forth the RSA.<br><br>2. By Bridging, if a cash collateral and debtor in possession financing order substantially in the form and substance as the DIP Financing/Cash Collateral Order is not entered within thirty (30) days of the Petition Date, subject to the Court's availability to hold a hearing to consider approval of such order.<br><br>3. By any Party, if any governmental authority, including any regulatory authority or court of competent jurisdiction, issues any ruling or order denying any requisite approval of, or enjoining, the consummation of any portion of the Restructuring Transaction.<br><br>4. By any Party, if an injunction, judgment, order, decree, ruling or charge has been entered that prevents consummation of the Restructuring Transaction. |

11

| | |
|---|---|
| | 5. By any Party, if there is an unequivocal rejection of consent, by a third party or such third party's governing entity, whose consent is required to effectuate the Restructuring Transaction.<br><br>6. By Bridging, if Hygea fails to comply with any of its obligations under the RSA or the DIP Loan Documents.<br><br>*See* RSA at § 12. |
| Specific Performance; Damages | The Parties acknowledge and agree that money damages may not be adequate remedy for any breach of the terms of the RSA and, accordingly, (i) agree that each Party is entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach, including an order of the Court or other court of competent jurisdiction requiring any Party to comply promptly with any of its obligations under the RSA; and (b) waive any requirement for the securing or posting of a bond in connection with such remedy; *provided, however*, the foregoing will not be the Parties' exclusive remedy and the Parties may pursue any and all remedies available at law or equity. *See* RSA at § 22. |
| Automatic Stay | Hygea acknowledges that after the commencement of the Chapter 11 Cases, the giving of notice of termination by any Party pursuant to the RSA will not be a violation of the automatic stay of section 362 of the Bankruptcy Code. *See* RSA at § 35. |

## BASIS FOR RELIEF AND APPLICABLE AUTHORITY

**A.     Assumption of the RSA is Authorized by Section 365(a) of the Bankruptcy Code.**

18.     The Debtors respectfully submit that this Court should authorize the Debtors to assume the RSA pursuant to section 365(a) of the Bankruptcy Code. The Debtors' decision to assume the RSA represents an exercise of sound business judgment. Section 365(a) of the Bankruptcy Code provides that a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The decision to assume an executory contract or unexpired lease is a matter within the "business judgment" of the debtor. *See In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (the "resolution of [the] issue of assumption or rejection will be a matter of business judgment by the bankruptcy court"); *Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d

12

Cir. 1982), *aff'd*, 465 U.S. 573 (1984); *see also In re Trans World Airlines, Inc.*, 261 B.R. 103, 120–21 (Bankr. D. Del. 2001).

19. When applying the business judgment rule in connection with a decision under section 365 of the Bankruptcy Code, courts show great deference to a debtor's business decisions. *See e.g.*, *In re Armstrong World Indus., Inc.*, 348 B.R. 136, 162 (Bankr. D. Del. 2006) ("Courts have uniformly deferred to the business judgment of the debtor to determine whether the rejection of an executory contract or unexpired lease by the debtor is appropriate under section 365(a)."); *Wheeling-Pittsburgh Steel Corp. v. W. Penn Power Co. (In re Wheeling-Pittsburg Steel Corp.)*, 72 B.R. 845, 849 (Bankr. W.D. Penn. 1987) ("Ordinarily, courts accord the debtor's business judgment a great amount of deference since the decision to assume or reject an executory contract is an administrative not a judicial matter."). Application of the business judgment rule requires a court to approve a debtor's business decision unless the decision is the product of bad faith, whim, or caprice. *See Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985); *see also In re Caribbean Petroleum Corp.*, 444 B.R. 263, 268 (Bankr. D. Del. 2010).

20. The RSA provides the Debtors with an actionable, expeditious path to confirmation of a Plan and emergence from chapter 11, all with the support of Bridging. First, the agreements set forth in the RSA position the Debtors to accomplish a crucial deleveraging and for a return to profitability that will permit the Reorganized Debtors to continue providing healthcare services to the Debtors' patients with minimal disruption, all on a timeline designed to minimize financial drain on the Debtors' businesses. Second, the RSA is the result of extensive, arm's-length negotiations between the Parties, each of which was (and is) represented by sophisticated and able counsel. Indeed, the Debtors believe that the Plan contemplated in the

RSA and Restructuring Term Sheet will result in the creditors of the estates receiving a greater distribution on account of their claims than is otherwise possible, through the creation of a liquidating trust formed for the benefit of general unsecured creditors. Finally, the RSA contains an explicit fiduciary out and reserves entirely to the Debtors the right to determine if their fiduciary duties require that it abandon the RSA.

21. Notably, courts in this District have approved debtors' assumption of agreements similar to the RSA. *See, e.g.*, *In re Hexion Holdings LLC*, Case No. 19-10684 (KG) (Bankr. D. Del. May 15, 2019); *In re New Mach Gen, LLC*, Case No. 18-11368 (MFW) (Bankr. D. Del. July 2, 2018); *In re FirstRain, Inc.*, Case No. 17-11249 (LSS) (Bankr. D. Del. June 21, 2017).

22. For all of these reasons, the Debtors believe that assumption of the RSA is an exercise of sound business judgment, is in the best interests of their estates, and should be approved.

**B.     Cause Exists to Modify the Automatic Stay to Effectuate the Relief Requested.**

23. Section 362(a) of the Bankruptcy Code operates to stay "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Section 362, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." *Id.* at § 362(d)(1).

24. Although the Debtors believe that the automatic stay is not implicated by the relief requested, to the extent necessary to permit the Parties to exercise their rights under the RSA, the Debtors seek authorization, under section 362(d) of the Bankruptcy Code, to modify the automatic stay for such purpose. For the reasons described herein, this relief is appropriate in the context of the assumption of the RSA.

**NO PRIOR REQUEST**

25. No previous request for the relief sought herein has been made to this or any other court.

**REQUEST FOR WAIVER OF STAY**

26. The Debtors requests a waiver of any stay of the effectiveness of the order approving the relief requested in the Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). The Debtors submit that, here, where the parties must move forward quickly with the filing of a plan of reorganization and related disclosure statement in order to meet the deadlines imposed by the RSA (which are necessary to conserve the limited funds available in the Debtors' estates), the order authorizing the Debtors' entry into the RSA must be immediately effective to avoid unnecessary delay. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that such rule applies.

**NOTICE**

27. Notice of this Motion will be given to: (a) the U.S. Trustee; (b) counsel to the Debtors' prepetition secured lender; (c) the parties included on the Debtors' consolidated list of their 40 largest unsecured creditors; and (d) all parties entitled to notice pursuant to Local Rule 2002-1(b). The Debtors submit that no other or further notice is required.

**NO PRIOR REQUEST**

28. No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
February 20, 2020

        COLE SCHOTZ P.C.

        */s/ J. Kate Stickles*
        J. Kate Stickles (I.D. No. 2917)
        Katherine M. Devanney (I.D. No. 6356)
        500 Delaware Avenue, Suite 1410
        Wilmington, Delaware 19801
        Telephone: (302) 652-3131
        Facsimile: (302) 652-3117

        – and –

        Michael D. Sirota (admitted *pro hac vice*)
        Felice R. Yudkin (admitted *pro hac vice*)
        Jacob S. Frumkin (admitted *pro hac vice*)
        Michael Trentin (admitted *pro hac vice*)
        25 Main Street
        Hackensack, New Jersey 07601
        Telephone: (201) 489-3000
        Facsimile: (201) 489-3479

        *Proposed Counsel for Debtors and*
        *Debtors-in-Possession*