**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------ x
                                                      :   Chapter 11

In re:                                          :

                                                      :   Case No. 20-10361 (KBO)

HYGEA HOLDINGS CORP., *et al.*,   :
                                                      :   (Jointly Administered)

Debtors.[1]                           :   **Hrg. Date: 3/24/20 at 2:00 p.m. (ET)**
                                                      :   **Obj. Deadline: 3/17/20 at 4:00 p.m. (ET)**
                                                      :
------------------------------------------------------------ x

**DEBTORS' APPLICATION FOR ENTRY
OF AN ORDER AUTHORIZING THE RETENTION
AND EMPLOYMENT OF ALVAREZ & MARSAL NORTH AMERICA, LLC AS
FINANCIAL ADVISORS TO DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

Hygea Holdings Corp. and certain of its affiliates, the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby apply (this "Application") for entry of an order substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to sections 327(a), 328(a) and 1107 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing the employment and retention of Alvarez & Marsal North America, LLC,

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: All Care Management Services, Inc. (6484); First Harbour Health Management, LLC (0941); First Harbour Medical Centers, LLC (3861); Florida Group Healthcare LLC (7956); Gemini Healthcare Fund, LLC (4928); Hygea Acquisition Longwood, LLC (1649); Hygea Acquisition Orlando, LLC (3507); Hygea Health Holdings, Inc. (8926); Hygea Holdings Corp. (2605); Hygea IGP of Central Florida, Inc. (9453); Hygea IGP, LLC (7724); Hygea Medical Centers of Florida, LLC (5301); Hygea Medical Partners, LLC (4486); Hygea of Delaware, LLC (4830); Hygea of Georgia, LLC (5862); Hygea of Pembroke Pines, LLC (6666); Hygea Primum Acquisition, Inc. (8567); Medlife Activity Center, LLC (2311); Mobile Clinic Services, LLC (9758); Palm A.C. MSO, LLC (2585); Palm Allcare Medicaid MSO, Inc. (6956); Palm Allcare MSO, Inc. (0319); Palm Medical Group, Inc. (5028); Palm Medical MSO LLC (7738); Palm Medical Network, LLC (9158); Palm MSO System, Inc. (2178); Palm PGA MSO, Inc. (8468); Physician Management Associates East Coast, LLC (7319); Physician Management Associates SE, LLC (3883); Physicians Group Alliance, LLC (7824); Primum Alternatives, Inc. (7441); Primum Healthcare, LLC (0157); and Professional Health Choice, Inc. (6850). The address of the Debtors' corporate headquarters is 8700 W Flagler Street, Suite 280, Miami, FL 33174.

together with employees of its affiliates (all of which are wholly-owned by its parent company and employees), its wholly owned subsidiaries, and independent contractors (collectively, "A&M") to serve as financial advisors to the Debtors, *nunc pro tunc* to the Petition Date (as defined below), pursuant to an engagement agreement dated October 23, 2019 (as supplemented and amended, the "Engagement Agreement"),[2] a copy of which is attached hereto as Exhibit B. In support of the Application, the Debtors rely upon and incorporate by reference the Declaration of Paul B. Rundell (the "Rundell Declaration"), a copy of which is attached hereto as Exhibit C. In further support of the Application, the Debtors represent as follows:

## RELIEF REQUESTED

1. By this Application, the Debtors respectfully request entry of the Proposed Order, authorizing the Debtors to employ and retain A&M as their financial advisors *nunc pro tunc* to the Petition Date pursuant to the terms set forth in the Engagement Agreement.

## JURISDICTION

2. This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

---

[2] Each Debtor agrees to be bound by the terms of the Engagement Agreement as modified by this Application such that each reference to "Company" in the Engagement Agreement shall mean the Debtors collectively, as the Engagement Agreement was executed only by Hygea Holdings Corp.

2

3. Venue of these cases and the Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

4. The statutory and legal predicates for the relief requested herein are sections 327(a), 328(a) and 1107 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016-1.

## BACKGROUND

5. On February 19, 2019 (the "Petition Date"), each Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases are being jointly administered. The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of the Chapter 11 Cases, is set forth in the *Declaration of Keith Collins, M.D. in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 13].

6. The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7. To date, no creditors' committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"). No trustee or examiner has been appointed in the Chapter 11 Cases.

## RETENTION OF A&M

8. In consideration of the size and complexity of their businesses, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced financial advisors will substantially enhance their attempts to maximize the value of their estates. A&M is well qualified to provide these services in light of its extensive knowledge and expertise with respect to chapter 11 proceedings.

60437/0001-19444309v2

9.      A&M specializes in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services and financial and operational restructuring. A&M's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts, business plans and related assessments of a business's strategic position; monitoring and managing cash, cash flow and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.

10.     Since its inception in 1983, A&M has been a global provider of turnaround advisory services to companies in crisis or those in need of performance improvement in specific financial and operational areas, including: *See, e.g.*, *In re Bristow Group Inc.*, No. 19-32713 (DRJ) (Bankr. D. Del. May 11, 2019); *In re Southcross Energy Partners, L.P.*, No. 19-10702 (MFW) (Bankr. D. Del. Apr. 1, 2019); *In re Imerys Talc America, Inc.*, No. 19-10289 (LSS) (Bankr. D. Del. Feb. 13, 2019); *In re Fairway Energy, LP*, No. 18-12684 (LSS) (Bankr. D. Del. Nov. 26, 2018); *In re Enduro Res. Partners LLC*, No. 18-11174 (KG) (Bankr. D. Del. May 15, 2018); *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. Oct. 25, 2017); *In re Gulfmark Offshore, Inc.*, No. 17-11125 (KG) (Bankr. D. Del. May 26, 2017); *In re Bonanza Creek Energy, Inc.*, No. 17-10015 (KJC) (Bankr. D. Del. Jan. 26, 2017).[3]

11.     In addition, A&M is familiar with the Debtors' businesses, financial affairs and capital structure. Since the firm's initial engagement on October 23, 2019 the A&M personnel providing services to the Debtors (the "A&M Professionals") have worked closely with the Debtors' management and other professionals in assisting with the myriad requirements of these

---

[3] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application. Copies of these orders are available upon request to the Debtors' proposed counsel.

Chapter 11 Cases. Consequently, the Debtors believe that A&M has developed significant relevant experience and expertise regarding the Debtors and the unique circumstances of these cases. For these reasons, A&M is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of these cases. Accordingly, the Debtors submit that the retention of A&M on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors and all other parties in interest, and should be granted in all respects.

## SCOPE OF SERVICES

12. Except as explicitly set forth herein or in any order granting this Application, the terms of the Engagement Agreement shall govern the Debtors' retention of A&M.

13. Among other things, A&M will provide assistance to the Debtors with respect to management of the overall restructuring process, the development of ongoing business and financial plans and supporting restructuring negotiations among the debtors, their advisors and their creditors with respect to an overall exit strategy for the Chapter 11 Cases.

14. A&M will provide such restructuring support services as A&M and the Debtors shall deem appropriate and feasible in order to manage and advise the Debtors in the course of the Chapter 11 Cases, including, but not limited to:

    (a)    assistance to the Debtors in the preparation of financial-related disclosures required by the Court, including the Debtors' schedules of assets and liabilities, statements of financial affairs and monthly operating reports;

    (b)    assistance to the Debtors with information and analyses required pursuant to the Debtors' debtor-in-possession financing;

    (c)    assistance with the identification and implementation of short-term cash management procedures;

    (d)    advisory assistance in connection with the development and implementation of key employee compensation and other critical employee benefit programs;

(e)      assistance with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the affirmation or rejection of each;

(f)      assistance to Debtors' management team and counsel focused on the coordination of resources related to the ongoing reorganization effort;

(g)      assistance in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

(h)      attendance at meetings and assistance in discussions with potential investors, banks, and other secured lenders, any official committee(s) appointed in the Chapter 11 Cases, the U.S. Trustee, other parties in interest and professionals hired by same, as requested;

(i)      analysis of creditor claims by type, entity, and individual claim, including assistance with development of databases, as necessary, to track such claims;

(j)      assistance in the preparation of information and analysis necessary for the confirmation of a plan of reorganization in the Chapter 11 Cases, including information contained in the disclosure statement;

(k)      assistance in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers;

(l)      assistance in the analysis / preparation of information necessary to assess the tax attributes related to the confirmation of a plan of reorganization in the Chapter 11 Cases, including the development of the related tax consequences contained in the disclosure statement;

(m)      litigation advisory services with respect to accounting and tax matters, along with expert witness testimony on case related issues as required by the Debtors; and

(n)      rendering such other general business consulting or such other assistance as Debtors' management or counsel may deem necessary consistent with the role of a financial advisor to the extent that it would not be duplicative of services provided by other professionals in these proceedings.

60437/0001-19444309v2

**A&M'S DISINTERESTEDNESS**

15.To the best of the Debtors' knowledge, information and belief, other than as set forth in the Rundell Declaration, A&M: (i) has no connection with the Debtors, their creditors, other parties in interest or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the U.S. Trustee; (ii) does not hold any interest adverse to the Debtors' estates; and (iii) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code.

16.Accordingly, the Debtors believe that A&M is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

17.In addition, as set forth in the Rundell Declaration, if any new material facts or relationships are discovered or arise, A&M will provide the Court with a supplemental declaration.

**TERMS OF RETENTION**

18.Subject to approval by the Court, the Debtors propose to employ and retain A&M to serve as the Debtors' financial advisors on the terms and conditions set forth in the Engagement Agreement.

19.<u>Compensation</u>.  In accordance with the terms of the Engagement Agreement,[4] A&M will be paid by the Company for the services of the A&M Professionals at their customary hourly billing rates which shall be subject to the following ranges:[5]

---

[4] The below compensation structure is being provided in summary form only and is not intended to supplant the Engagement Agreement.  To the extent there are any inconsistencies between the Application and the Engagement Agreement, the Engagement Agreement shall control unless otherwise stated.

[5] The rates are subject to adjustment annually at such time as A&M adjusts its rates generally and the rates listed herein reflect the annually adjusted rates for 2020.

Restructuring Advisory Services:
i. Managing Directors: $900-1,150
ii. Directors: $70-875
iii. Analysts/Associates: $400-675

Case Management Services:
i. Managing Directors: $850-1,000
ii. Directors: $675-825
iii. Analysts/Associates: $400-625

Such rates and ranges shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

20. In addition, A&M will be reimbursed for the reasonable out-of-pocket expenses of the A&M Professionals incurred in connection with this assignment, such as travel, lodging, third party duplications, messenger and telephone charges. A&M shall also be reimbursed for the reasonable fees and expenses of its counsel incurred in connection with the preparation and approval of this Application. All fees and expenses due to A&M will be billed billed in accordance with any interim compensation orders entered by this Court, and the relevant sections of the Bankruptcy Code, Bankruptcy Rules and local rules of this Court.

21. <u>Indemnification</u>. As a material part of the consideration for which the A&M Professionals have agreed to provide the services described herein, the Debtors have agreed to the indemnification provisions in paragraph 10 of the Engagement Agreement. Notwithstanding the foregoing, the Debtors and A&M have agreed to modify such provisions as follows, during the pendency of the Chapter 11 Cases:

(a) A&M shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Agreement for services, unless such services and the indemnification, contribution or reimbursement therefore, are approved by the Court;

(b) The Debtors shall have no obligation to indemnify A&M, or provide contribution or reimbursement to A&M, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from A&M's

        gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of A&M contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Company, et al.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to A&M's gross negligence, willful misconduct, breach of fiduciary duty, or bad faith or self-dealing but determined by this Court, after notice and a hearing to be a claim or expense for which A&M should not receive indemnity, contribution or reimbursement under the terms of the Agreement as modified by this Order; and

  (c)      If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the Chapter 11 Cases, A&M believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Agreement (as modified by this Application), including without limitation the advancement of defense costs, A&M must file an application therefore in this Court, and the Debtors may not pay any such amounts to A&M before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by A&M for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify A&M. All parties in interest shall retain the right to object to any demand by A&M for indemnification, contribution or reimbursement.

22.    The Debtors understand that A&M intends to apply to the Court for allowance of compensation and reimbursement of expenses for its financial advisory services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding Local Rules, orders of this Court and guidelines established by the U.S. Trustee.

23.    A&M received $200,000.00 as a retainer in connection with preparing for and conducting the filing of these Chapter 11 Cases, as described in the Engagement Agreement. In the 90 days prior to the Petition Date, A&M received retainers and payments totaling $800,000.00 in the aggregate for services performed for the Debtors. A&M has applied these funds to amounts due for services rendered and expenses incurred prior to the Petition Date. A precise disclosure of the amounts or credits held, if any, as of the Petition Date will be provided

9

in A&M's first interim fee application for postpetition services and expenses to be rendered or incurred for or on behalf of the Debtors. The unapplied residual retainer, which is estimated to total $4,717.50, will not be segregated by A&M in a separate account, and will be held until the end of these Chapter 11 Cases and applied to A&M's finally approved fees in these proceedings.

24. Given the numerous issues that A&M may be required to address in the performance of its services, A&M's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth herein are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

## APPLICABLE AUTHORITY

25. The Debtors submit that the retention of A&M under the terms described herein is appropriate under sections 327(a), 328 and 1107(b) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code empowers the trustee, with the Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

(a) is not a creditor, an equity security holder, or an insider;

(b) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(c) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason. 11 U.S.C. § 101(14).

26. Further, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b). A&M's prepetition relationship with Debtors is therefore not an impediment to A&M's retention as Debtors' postpetition financial advisors.

27. Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer . . ." 11 U.S.C. § 328(a). The Debtors submit that the terms and conditions of A&M's retention as described herein, including the proposed compensation and indemnification terms, are reasonable and in keeping with the terms and conditions typical for engagements of this size and character. Since the Debtors will require substantial assistance with the reorganization process, it is reasonable for the Debtors to seek to employ and retain A&M to serve as their financial advisors on the terms and conditions set forth herein.

## NOTICE

28. Notice of this Application will be given to: (a) the U.S. Trustee; (b) counsel to the Debtors' prepetition secured lender; (c) the parties included on the Debtors' consolidated list of their 40 largest unsecured creditors; and (d) all parties entitled to notice pursuant to Local Rule 2002-1(b). The Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

29. No previous request for the relief sought herein has been made to this or any other court.

## CONCLUSION

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: March 3, 2020

                                              /s/ Keith Collins
                                              Keith Collins, M.D.
                                              President and Chief Executive Officer
                                              Hygea Holdings Corp.